ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A Professional Corporation
Scott K. Dauscher State Bar No. 204105
SDauscher@aalrr.com
Marleen L. Sacks State Bar No. 161388
MSacks@aalrr.com
Jon M. Setoguchi State Bar No. 207113
JSetoguchi@aalrr.com
12800 Center Court Drive South, Suite 300
Cerritos, California 90703-9364
Telephone: (562) 653-3200
Fax: (562) 653-3333

Attorneys for Defendant BADGER DAYLIGHTING CORP.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DANIEL SCALES, an individual; ALEX MAGANA, an individual; and BRIAN MARTELLO, an individual,

Plaintiffs,

v.

BADGER DAYLIGHTING CORP., a Nevada Corporation; and DOES 1-20 inclusive,

Defendants.

Case No.

**NOTICE OF REMOVAL OF ACTION TO UNITED STATES DISTRICT COURT UNDER 28 U.S.C. § 1441 DIVERSITY**

Kern County Superior Court
Case No. BCV-17-100196

014854.00011
15083638.1

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA:

PLEASE TAKE NOTICE that Defendant Badger Daylighting Corp. (hereinafter "Badger") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Kern, where the above-titled action was filed, to the United States District Court for the Eastern District of California, Bakersfield Division. In support this Notice, Badger alleges as follows:

**JURISDICTION**

1. This is a civil action over which this Court has original jurisdiction, and one in which Badger may remove pursuant to the provisions of 28 U.S.C. §§ 1332(a) and 1441(b) to this Court, in that the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states as described further below.

**VENUE**

2. Venue lies in the Eastern District, Bakersfield Division pursuant to 28 U.S.C. §§ 1441(a), 1446(a), and 84(b). This action was originally brought in the Superior Court of the State of California, County of Kern.

**STATUS OF PLEADINGS**

3. On January 27, 2017, Plaintiffs Daniel Scales, Alex Magana and Brian Martello ("Plaintiffs") commenced this action by Complaint entitled *Daniel Scales, an individual; Alex Magana, an individual; and Brian Martello, an individual v. Badger Daylighting Corp., a Nevada Corporation; and Does 1-20 inclusive*, in the Kern County Superior Court, Case No. BCV-17100196 (the "State Court Action"), for alleged Declaratory Judgment. Plaintiffs also filed a Summons on January 30, 2017. [True and correct copies of the Summons and Complaint are attached hereto as Exhibit A.]

4. Plaintiffs served the Complaint on Badger on February 1, 2017, through C T Corporation System, its authorized agent for service of process.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

5. This Notice of Removal is being filed within 30 days of service of the Complaint on Badger, and is therefore timely pursuant to 28 U.S.C. § 1446(b).

6. Copies of all documents served on Badger and filed by Plaintiffs and/or received by Badger from the Kern Superior Court in this matter are attached hereto as Exhibit A. Accordingly, the requirements of 28 U.S.C. § 1446(a) have been satisfied.

**DIVERSITY OF PARTIES**

7. **Plaintiffs' Citizenship**. At the time of commencement of the State Court Action and at the time of removal, Plaintiffs were, and still are, citizens of the State of California. [Complaint, ¶¶ 1-3.]

8. **Defendant's Citizenship**. At the time of commencement of the State Court Action and at the time of removal, Badger was, and still is, a Nevada corporation with its principal place of business in the State of Indiana. Under 28 U.S.C. § 1332(c)(1), a corporation is deemed a citizen of "any State by which it has been incorporated *and* of the State where it has its principal place of business." The term "principal place of business" in the Federal diversity jurisdiction statute refers to the "nerve center" of the corporation, which has been defined as "the place where a corporation's officers direct, control, and coordinate the corporation's activities . . . [which] in practice . . . should normally be the place where the corporation maintains its headquarters — provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds it board meetings." *The Hertz Corp. v. Friend,* 210 WL 605601, at *11 (Feb. 23. 2010). First, Badger is a citizen of the State of Nevada pursuant to 28 U.S.C. § 1332 (c)(1) because it is a corporation incorporated in and organized under the laws of the State of Nevada. Therefore, Badger meets the first requirement for establishing diversity of citizenship. Second, Badger is also a citizen of the State of Indiana, because its principal place of business is in the State of Indiana under the nerve center test. Badger's corporate headquarters in

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

Brownsburg, Indiana, are the center from which the corporation's officers direct, control and coordinate Badger's activities and operations.

**AMOUNT IN CONTROVERSY**

9. Plaintiffs seek injunctive relief and a declaratory judgment that their agreements with Badger are an unlawful and unenforceable restraint of trade. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. St. Apple Adver. Comm'n*, 423 U.S. 333, 347 (1977); *Cohn v. Petsmart, Inc.*, 282 F.3d 837, 840 (9th Cir. 2002). The value of the declaratory or injunctive relief does not need to be an exact valuation. *Luna v. Kemira Specialty, Inc.*, 575 F.Supp.2d 1166, 1172 (C.D. Cal. 2008). When determining the amount of controversy, the value of the object of the litigation may be measured from the perspective of either party. *See In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001).

10. From Plaintiffs' perspective, the value of this litigation is in the salary that they will receive from one of Badger's competitors, Clean Harbors Corporation. While employed by Badger, Plaintiff Scales was a Regional Manager and was to receive a salary of over $75,000 from Badger in 2016, plus benefits. While employed by Badger, Plaintiff Magana was an Area Manager and was to receive a salary of over $75,000 from Badger in 2016, plus benefits. While employed by Badger, Plaintiff Martello was an Area Manager and was to receive a salary of over $75,000 from Badger in 2016, plus benefits. Plaintiffs voluntarily left Badger's employ, presumably to take positions with Clean Harbors Corporation offering equal or greater compensation. This puts the amount in controversy well above the $75,000 jurisdictional minimum. *See Prutsman v. Rust Consulting, Inc.*, No. C12 6448 PJH, 2013 WL 1222707, at *1 (N.D. Cal. Mar. 25, 2013); *see also Rao v. Tyson Foods, Inc.*, 2009 WL 1657458, *1 (E.D. Cal. 2009) (finding that where a former employee, who received a salary of more than $75,000, sought a declaratory

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

judgment that non-complete clauses in his employment contract were invalid, the amount in controversy exceeded $75,000). Thus, from Plaintiffs' perspective alone, the amount in controversy is above the jurisdictional requirement of $75,000.

11. From Badger's perspective, the amount in controversy exceeds the $75,000 jurisdictional threshold. Badger employed Plaintiff Scales as a Regional Manager. As a Regional Manager for Badger, Plaintiff Scales had prolonged and regular access to and became privy to trade secret, confidential or competitively sensitive information of Badger; Plaintiff Scales was exposed to and developed relationships with customers of Badger in the State of California; Plaintiff Scales developed relationships with Badger's employees; and Plaintiff Scales became familiar with (i) the training each Badger employee received; (ii) the skills and experience Badger's employees brought to their jobs with Badger, and (iii) the historical compensation and benefits the Badger employees received during their employment with Badger. While employed by Badger, Plaintiff Scales oversaw numerous projects for Badger that generated millions of dollars in area revenues.

12. Badger employed Plaintiff Magana as an Area Manager. As an Area Manager for Badger, Plaintiff Magana had prolonged and regular access to and became privy to trade secret, confidential or competitively sensitive information of Badger; Plaintiff Magana was exposed to and developed relationships with customers of Badger in the State of California; Plaintiff Magana developed relationships with Badger's employees; and Plaintiff Magana became familiar with (i) the training each Badger employee received; (ii) the skills and experience Badger's employees brought to their jobs with Badger, and (iii) the historical compensation and benefits the Badger employees received during their employment with Badger. While employed by Badger, Plaintiff Magana oversaw numerous projects for Badger that generated millions of dollars in area revenues.

13. Badger employed Plaintiff Martello as an Area Manager. As an Area Manager for Badger, Plaintiff Martello had prolonged and regular access to and

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

became privy to trade secret, confidential or competitively sensitive information of Badger; Plaintiff Martello was exposed to and developed relationships with customers of Badger in the State of California; Plaintiff Martello developed relationships with Badger's employees; and Plaintiff Martello became familiar with (i) the training each Badger employee received; (ii) the skills and experience Badger's employees brought to their jobs with Badger, and (iii) the historical compensation and benefits the Badger employees received during their employment with Badger. While employed by Badger, Plaintiff Martello oversaw numerous projects for Badger that generated millions of dollars in area revenues. *See Mahoney v. Depuy Orthopaedics, Inc.*, No. CIVF 07 1321 AWISMS, 2007 WL 3341389, at *2, 5 (E.D. Cal. Nov. 8, 2007) (finding it unlikely that profit would be equal or less than $75,000 in light of approximately $3.9 million in sales revenues between January 2006 and November 2006, and $2.4 million in sales revenues between December 2006 and August 2007, generated by plaintiff); *Hartstein v. Rembrandt IP Solutions, LLC*, No. 12 2270 SC, 2012 WL 3075084, at *3 (N.D. Cal. July 30, 2012) (finding it more likely than not that plaintiff was worth more than $75,000 to defendant based on a declaration that "the potential expected profit from many of [p]laintiff's investment leads, if acquired and developed, was in the millions of dollars," even though the profitability of the leads could not be accurately measured until a future date); *Info. Strategies, Inc. v. Dumosch*, 13 F. Supp. 3d 135, 142 (D.D.C. 2014) (finding plausible that defendant's work was worth more than $75,000 to plaintiff employer where revenue from business generated by defendant exceeded $1.5 million dollars, and revenue from billing for work defendant himself performed exceeded $265,000, even though the parties submitted no evidence showing the exact figure of profit accrued from revenues generated by defendant).

14. From Badger's perspective, the object of the litigation can also be measured by the value of Badger's trade secrets and confidential information.

*Union Pac. R. Co. v. Mower*, 219 F.3d 1069, 1071 n.1 (9th Cir. 2000) (discussing amount in controversy in the context of a party protecting its confidential information from disclosure); *Davis v. Advanced Care Tech., Inc.*, 2007 WL 1302736, at *2 (E.D. Cal. May 2, 2007) ("Where the object of the litigation is a noncompetition agreement designed to protect a company's confidential information, the value to the company of protecting that information is the amount in controversy"). The industry in which Badger operates is highly competitive. Consequently, Badger takes a variety of measures to ensure that its confidential information and trade secrets are protected from unauthorized disclosures.

15. Plaintiffs are currently employed by Badger's competitor, Clean Harbors Corporation, and, upon information and belief, one or more of Plaintiffs solicited Badger employees to join them at Clean Harbors Corporation. Plaintiffs' agreements with Badger contemplate the protection of confidential information and trade secrets. Plaintiffs had prolonged and regular access to a wide variety of Badger's confidential information and trade secrets, including but not limited to customer lists, pricing information, and proprietary manufacturing designs and processes. Badger has spent has millions of dollars and years developing this information and it is not generally known to and not readily ascertainable by the public, and therefore far exceeds the jurisdictional requirement of $75,000.

16. Based on the foregoing, this Court has jurisdiction over the State Court Action under the provisions of 28 U.S.C. § 1332, in that this Action involves a controversy which exceeds the value of $75,000, exclusive of interests and costs, and is between citizens of different States. Accordingly, this Action is properly removed to this Court pursuant to the provisions of 28 U.S.C. §§ 1441 and 1446.

**NOTICE TO STATE COURT**

17. A true and correct copy of this Notice of Removal has been served on the Plaintiffs and filed with the Clerk of the Superior Court of the State of California, County of Kern.

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

ATKINSON, ANDELSON, LOYA, RUUD & ROMO
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
12800 CENTER COURT DRIVE SOUTH, SUITE 300
CERRITOS, CALIFORNIA 90703-9364
TELEPHONE: (562) 653-3200
FAX: (562) 653-3333

**CONCLUSION**

18. Badger, having shown that diversity exists and that the amount in controversy exceeds the jurisdictional minimum, is entitled to remove this matter to this Court.

WHEREFORE, Badger prays that the above action now pending against it in the Superior Court of the State of California in and for the County of Kern be removed therefrom to this Court.

Dated: February 15, 2017

ATKINSON, ANDELSON, LOYA, RUUD & ROMO

By: /s/ Jon M. Setoguchi
Jon M. Setoguchi
Attorneys for Defendant BADGER DAYLIGHTING CORP.

# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

ELECTRONICALLY FILED
1/30/2017
Kern County Superior Court
Terry McNally
By Vanessa Cofield, Deputy

**NOTICE TO DEFENDANT:**
***(AVISO AL DEMANDADO):***

BADGER DAYLIGHTING CORP., a Nevada Corporation; and DOES 1-20, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
***(LO ESTÁ DEMANDANDO EL DEMANDANTE):***

DANIEL SCALES, an individual; ALEX MAGANA, an individual; and BRIAN MARTELLO, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

CASE NUMBER: *(Número del Caso):* BCV-17-100196

Kern County Superior Court, Metro Division, 1415 Truxton Ave., Bakersfield, California 93301

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David Greifinger, Attorney at Law, 15515 Sunset Blvd., No. 214, Pacific Palisades, CA, (424) 330-0193

DATE: *(Fecha)* 1/30/2017 TERRY MCNALLY Clerk, by *(Secretario)* Vanessa Cofield, Deputy *(Adjunto)*

*(For proof of service of this summons, use* Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario* Proof of Service of Summons, *(POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Badger Daylighting Corp., a Nevada Corporation

under: ☒ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
☐ other *(specify)*:

4. ☒ by personal delivery on *(date)*: 2-1-17

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

David R. Greifinger (SBN 105242)
15515 Sunset Blvd., No. 214
Pacific Palisades, California 90272
Telephone: 424-330-0193
Facsimile: 831-920-4864
E-mail: tracklaw@me.com

Attorneys for Plaintiffs
DANIEL SCALES, ALEX MAGANA, and BRIAN MARTELLO

ELECTRONICALLY FILED
1/27/2017 8:00:00 AM
Kern County Superior Court
Terry McNally
By Vanessa Cofield, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF KERN

DANIEL SCALES, an individual; ALEX MAGANA, an individual; and BRIAN MARTELLO, an individual,

Plaintiffs,

vs.

BADGER DAYLIGHTING CORP., a Nevada Corporation; and DOES 1-20, inclusive,

Defendants.

Case No. BCV-17-100196

**COMPLAINT FOR:**

**(1) DECLARATORY JUDGMENT**

Plaintiffs Daniel Scales, Alex Magana, and Brian Martello allege on information and belief as follows:

**THE PARTIES**

1. Plaintiff Daniel Scales ("Scales") is and was at all relevant times an individual residing in Kern County, California. Scales is a former employee of Defendant Badger Daylighting Corp. ("Badger"), where he worked as a Regional Manager from approximately August 13, 2014, until about July 5, 2016. Scales is now a Regional Manager for Clean Harbors Corporation ("Clean Harbors"), which does business in the State of California and in Kern County, and which is a competitor of Defendant Badger in the excavation service industry.

2. Plaintiff Alex Magana ("Magana") is and was at all relevant times an individual residing in Kern County, California. Magana is a former employee of Defendant Badger, where he worked as an Area Manager from approximately October 16, 2015, until about September 16, 2016. Magana is now an Area Manager for the Bakersfield, California Area for Clean Harbors.

3. Plaintiff Brian Martello ("Martello") is and was at all relevant times an individual residing in Kern County, California. Magana is a former employee of Defendant Badger, where he worked as an Area Manager for the Riverside, California Area from approximately March 2, 2015, until about August 12, 2016. Martello is now an Area Manager for Clean Harbors.

4. Defendant Badger is a Nevada Corporation doing business throughout the United States including California.

5. Plaintiffs sue Defendants DOES 1 through 20 under fictitious names. Their true names and capacities, whether individual, corporate, associate, or otherwise are unknown to Plaintiffs. When Plaintiffs ascertain their true names and capacities, they will amend the complaint to insert the true name and capacity of each fictitiously named defendant. Each fictitiously named defendant is legally responsible in some manner for the occurrences alleged in this complaint, and those defendants directly and proximately caused Plaintiffs' damages. All references to "Defendants" in this Complaint include DOES 1 through 20.

6. At all times relevant to this complaint, Defendants, and each of them, were the agents, servants, employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or

corporations, and joint ventures of the other Defendants, and were, as such, acting within the course, scope, and authority of each other Defendant. Plaintiff further allege that each of the Defendants acted in concert with, and with the consent of, each of the other Defendants, and that each of the Defendants ratified or agreed to accept the benefits of the conduct of each of the Defendants.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over all causes of action asserted in this Complaint under California Constitution, Article VI, Section 10, California Business and Professions Code section 17204, and California Code of Civil Procedure section 410.10 by virtue of the fact that this is a civil action wherein the matter in controversy, exclusive of interest, exceeds $25,000, and because this case is a cause not given by statute to other trial courts.

8. Venue is proper in Kern County under California Code of Civil Procedure Section 395 because (i) an individual defendant conducts business in Kern County, California; (ii) one or more of the acts, breaches, misappropriations, and other wrongful conduct giving rise to the causes of action asserted occurred or was to be performed in Kern County, California; and/or (iii) the obligations that Scales, Magana, and Martello were to perform that are at issue in this complaint were to be performed in Kern County, California.

## GENERAL ALLEGATIONS

9. Plaintiffs Scales, Magana, and Martello are seasoned veterans in the excavation industry, having served in various positions with large excavation service companies over the years.

10. Defendant Badger is a provider of hydrovac excavation services throughout the United States, including in the State of California.

11. On or about August 13, 2014, Badger presented Scales with an employment offer. As a condition of employment, Badger required Scales to sign, and Scales did sign, a Confidentiality and Non-Competition Agreement (the "Scales Non-Competition Agreement") that purports to prohibit Scales from competing with Badger, and which reads in part as follows:

1. Covenants Against Competition. . . . Employee covenants and agrees that during

his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a) solicit, accept, or divert business from any customer of the Corporation or attempt to divert any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. . . . .

(b) within the geographical area of the State(s) of California, Oregon and Washington compete in any manner with the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business which competes directly or indirectly with the Corporation; and

(c) solicit for employment any employee, consultant, contractor, or sub-contractor of the Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broadest sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

* * *

7. Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana.

A true and correct copy of the Scales Non-Competition Agreement is attached as Exhibit A.

12. On or about October 13, 2015, Badger presented Magana with an employment offer. As a condition of employment, Badger required Magana to sign, and Magana did sign, a Confidentiality and Non-Competition Agreement (the "Magana Non-Competition Agreement") that purports to prohibit Magana from competing with Badger. The Magana Non-Competition Agreement contains substantially similar or identical restrictive covenants as are contained the Scales Non-Competition Agreement, except the purported governing law for the Magana Non-Competition Agreement is Ohio law rather than Indiana law, the Magana Non-Competition

Agreement does not contain a forum-selection provision, and the Magana Non-Competition Agreement defines the "Restricted Area" is "(i) the United States; (ii) Canada; (iii) the state(s) where the Employee resided during Employee's employment with Corporation; (iv) the state(s) where Employee provided services for Corporation during Employee's employment; and (v) the physical location of any customer of Corporation for whom Employee performed services." A true and correct copy of the Magana Non-Competition Agreement is attached as Exhibit B.

13. On or about March 2, 2015, Badger presented Martello with an employment offer. As a condition of employment, Badger required Scales to sign, and Martello did sign, a Confidentiality and Non-Competition Agreement (the "Martello Non-Competition Agreement") that purports to prohibit Martello from competing with Badger. On information and belief, the Martello Non-Competition Agreement contains substantially similar or identical restrictive covenants as are contained the Magana Non-Competition Agreement, and is otherwise substantially identical to the Magana Non-Competition Agreement.

14. On or about July 5, 2016, Scales' employment with Defendant Badger terminated. On about September 16, 2016, Magana's employment with Defendant Badger terminated. On about August 12, 2016, Martello's employment with Defendant Badger terminated.

15. On August 16, 2016, Badger filed an action against Scales in Indiana Marion Superior Court, Civil Division 1, Cause No. 49DO1-1608-PL-030094 ("Indiana Action"), seeking to enforce the illegal Scales Non-Competition Agreement against Scales and to prevent him from earning a livelihood. A true and correct copy of the Summons and Complaint in the Indiana Action is attached as Exhibit C.

16. The Scales Non-Competition Agreement is unenforceable under California Business and Professions Code section 16600. Nevertheless, Badger contends that Indiana law applies to the interpretation and enforcement of the Scales Non-Competition Agreement. Badger's requirement that Scales sign the illegal Non-Competition Agreement, and Badger's efforts to enforce the restrictive covenants of the Non-Competition Agreement under Indiana law, constitute an unfair business practice, in violation of Business and Professions Code section 17200.

17. The Magana and Martello Non-Competition Agreements are unenforceable under California Business and Professions Code section 16600. Nevertheless, Badger contends that Ohio law applies to the interpretation and enforcement of the Magana and Martello Non-Competition Agreements. Badger's requirement that Magana and Martello sign the illegal Magana and Martello Non-Competition Agreements, respectively, and Badger's efforts to enforce the restrictive covenants of the Non-Competition Agreements under Ohio law, constitute an unfair business practice, in violation of Business and Professions Code section 17200.

18. Section 16600 of the California Business and Professions Code provides, in relevant part, "Every contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void." This statute reflects a well-established, strong public policy of the State of California that employees have the right to pursue any lawful employment and enterprise of their choice in California, without being subject to illegal contractual restraints. An employee's freedom of movement among employers has been consistently and repeatedly recognized as paramount to the competitive business interests of an employer.

19. The California Supreme Court has repeatedly made clear that Business and Professions Code section 16600 "represents a strong public policy of the state." (*Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 950 (2008).) Section 16600 broadly prohibits "any" restrictive covenants that restrain California employees from engaging in a lawful profession, trade, or business.

20. In the years since section 16600 was enacted, California courts have "consistently affirmed that section 16600 evinces a settled legislative policy in favor of *open competition and employee mobility*." (*Edwards*, *supra,* 44 Cal.4th at p. 946 (emphasis added). This fundamental public policy against restrictive covenants is so strong that California law prohibits even narrow restraints on an employee's ability to practice his profession. (*Id.* at pp. 949-950.)

21. Plaintiff Scales has demanded that Badger cease-and-desist from its unfair competition, but Badger has rebuffed those demands.

22. Badger has engaged in ongoing efforts to enforce similarly illegal non-competition agreements with other former employees who reside in California, including the filing of litigation and threats against former employees and their new employers. The employment status of Plaintiffs with their current employer is under threat because of Badger's illegal activity. Declaratory relief is necessary.

**FIRST CAUSE OF ACTION**

**Declaratory Judgment**

(Scales, Magana, and Martello Against Badger and DOES 1-20)

23. Plaintiffs Scales, Magana, and Martello incorporate by reference as though fully set forth the preceding paragraphs of this complaint.

24. An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding whether the Scales, Magana, and Martello Non-Competition Agreements and restrictive covenants are valid, enforceable provisions that can lawfully restrain Plaintiffs, and whether Defendants' attempts to enforce the Agreements constitutes an unfair business practice.

25. Plaintiffs contend that the restrictive covenants of their Non-Competition Agreements are unenforceable in California as an unlawful restraint of trade in violation of Business and Professions code section 16600, and that Defendants' effort to avail themselves of this provision is an unfair business practice under Business & Professions Code section 17200. Defendants dispute Plaintiffs' contention.

26. Under the meaning of Code of Civil Procedure section 1060, an actual case or controversy has arisen between Plaintiffs and Defendants. Plaintiffs seek a judicial declaration under section 1060 that their respective Non-Competition Agreements are an unlawful and unenforceable restraint of trade, in violation of section 16600 of the California Business and Professions Code, and that Defendants' efforts to enforce the Agreement constitutes an unfair business practice under Business and Professions Code section 17200.

**PRAYER FOR RELIEF**

Plaintiffs Daniel Scales, Alex Magana, and Brian Martello pray for judgment against Defendant Badger Daylighting Corp. and Does 1-20 as follows:

1. For a declaratory judgment that the Scales, Magana, and Martello Non-Competition Agreements are an unlawful and unenforceable restraint of trade, in violation of section 16600 of the Business and Professions Code, and that Defendants' efforts to enforce the Agreements constitute an unfair business practice under Business and Professions Code section 17200;

2. For attorneys' fees under to the Non-Competition Agreements at issue; and

3. For such other relief as the Court deems just and proper.

Dated: January 26, 2017

By: [signature]
David R. Greifinger
Attorney for Plaintiffs
DANIEL SCALES, ALEX MAGANA, and
BRIAN MARTELLO

**Ex. A**

# CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into by and among BADGER DAYLIGHTING CORP., a Nevada corporation (the "Corporation") and Daniel Scales (the "Employee").

## Recitals

A. The Corporation is engaged in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada (the "Business").

B. Employee will be an at-will employee of the Corporation and in such capacity will have access to confidential and proprietary information and materials integral to the welfare of the Business which the Company desires to maintain as confidential.

## Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and promises contained herein, each act done pursuant hereto, Employee's at-will employment by the Corporation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Covenants Against Competition. The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee will have access to certain confidential and proprietary information integral to the Business, and the services Employee will render to the Corporation will be of a unique and special character. In view of this relationship with the Corporation, Employee covenants and agrees that during his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a) solicit, accept, or divert business from any customer of the Corporation or attempt to convert any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. As used herein, the term "customer" shall mean any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the Period, or any such

EXHIBIT
A

persons or entities known by Employee to have been targeted or contacted by the Corporation for the sale of such services during such twelve months;

(b)  within the geographical area of the State(s) of California, Oregon and Washington compete in any manner with the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business which competes directly or indirectly with the Corporation; and

(c)  solicit for employment any employee, consultant, contractor or sub-contractor of the Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broadest sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

2.  Confidentiality.  The Corporation possesses, and will continue to possess, information which has been created, discovered, developed by or otherwise become known to the Corporation (including information discovered or made available by subsidiaries, affiliates or joint ventures of the Corporation or in which property rights have been assigned or otherwise conveyed to the Corporation) which information has commercial value to the Corporation, including but not limited to trade secrets, innovations, equipment designs, processes, computer codes, data, know how, improvements, discoveries, developments, techniques, marketing plans, strategies, costs, customers, and client lists, or any information Employee has reason to know the Corporation would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesired publicity, whether or not developed by Employee ("Confidential Information").  Unless previously authorized in writing or instructed in writing by the Corporation, Employee will not, at any time, disclose to others, or use, or allow anyone else to disclose or use any Confidential Information (except as may be necessary in the performance of Employee's employment with the Corporation), unless and until and then only to the extent that, such Confidential Information has become ascertainable or obtained from public or published sources or was available to the Employee on a non-confidential basis prior to any disclosure, provided that the source of such material is or was not bound by any obligation of confidentiality to the Corporation.

Upon termination of employment, Employee shall return to the Corporation any and all property and records of the Corporation in his possession, at the Corporation, at his personal residence or elsewhere.  The property covered hereby includes, but is not limited to, all information described in the preceding paragraph, the original and all copies of any Corporation documents, the original and all copies of any computer tapes

or disk containing any Corporation information, credit cards, keys to the Corporation's facility or equipment, and any and all other Corporation material.

3. Remedies. Employee acknowledges that the limitations contained herein are reasonable and will not prohibit him from earning a livelihood. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys fees and costs incurred by the Corporation in enforcing this Agreement. Nothing herein, however, shall be construed as prohibiting the Corporation from pursuing any other remedies available to the Corporation for such breach or threatened breach, including the recovery of damages from the Employee.

4. Waiver of Breach and Severability. The waiver by the Corporation of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Employee. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, the parties agree that any such part should be construed by a court, by limiting or reducing it, so as to be enforceable to the greatest or broadest extent compatible with applicable law as it then exists. In the event any provision of this Agreement is found to be invalid or unenforceable, it may be severed from this Agreement, and the remaining provisions of this Agreement shall continue to be binding and effective, or the court may reform the unenforceable provision in a manner which is enforceable to the maximum extent permitted by law and is consistent with the general intention of the parties.

5. Entire Agreement. This Agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements between the parties concerning the subject matter hereof. This Agreement may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

6. Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employee's last-known residence, in the case of the Employee, or its principal office, in the case of the Corporation.

7. Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana.

8. Voluntary Execution. The Employee acknowledges that he has had the right to secure legal counsel to review and discuss the legal implications of this Agreement prior to its execution and that he has entered into this Agreement voluntarily. No party to this Agreement shall be deemed to be the author of this Agreement and there shall be no

presumption that this Agreement is to be construed for or against any party to this Agreement on the basis of the authorship or drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective the 25th day of August of 2014.

Date: 8/13/14

Daniel Scales "Employee"

BADGER DAYLIGHTING CORP.

Date: 8/14/14

By: ________________

Its: ________________

"Corporation"

C:\My Documents\Conf and Non-Compete Blank.doc

**Ex. B**

CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into by and among BADGER DAYLIGHTING CORP., a Nevada corporation (the "Corporation") and Alexander Magana (the "Employee").

Recitals

A. The Corporation is engaged in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada (the "Business").

B. Employee will be or will continue to be an at-will employee of the Corporation and in such capacity has had and/or will have access to confidential and proprietary information and materials integral to the welfare of the Business which the Company desires to maintain as confidential.

Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and promises contained herein, each act done pursuant hereto, Employee's at-will employment by the Corporation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Covenants Against Competition. The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee has had access and/or will have access to certain confidential and proprietary information integral to the Business, and the services Employee has rendered and/or will render to the Corporation will be of a unique and special character. In view of this relationship with the Corporation, Employee covenants and agrees that during his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a) solicit, accept, or divert business from any customer of the Corporation or attempt to convince any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation. As used herein, the term "customer" shall mean (i) any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the Period; (ii) any person or entity to whom Employee provided services during the preceding twelve months prior to the start of the Period; or (iii) any such persons or entities known by

Employee to have been targeted or contacted by the Corporation for the sale of such services during such twelve months:

(b) within the Restricted Area, compete in any manner with the Business of the Corporation. or own, manage, operate, control, be employed by, participate in, or be connected in any manner with, in any competitive capacity, the ownership, management, operation or control of any person, business or entity which competes directly or indirectly with the Business of the Corporation. As used herein, the term "Restricted Area" shall include the following geographic areas: (i) the United States; (ii) Canada; (iii) the state(s) where the Employee resided during Employee's employment with Corporation; (iv) the state(s) where Employee provided services for Corporation during Employee's employment; and (v) the physical location of any customer of Corporation for whom Employee performed services; and

(c) solicit, encourage or induce any employee, consultant, contractor or sub-contractor of the Corporation to terminate their relationship with Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broadest sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

2. Confidentiality. The Corporation possesses, and will continue to possess, information which has been created, discovered, developed by or otherwise become known to the Corporation (including information discovered or made available by subsidiaries, affiliates or joint ventures of the Corporation or in which property rights have been assigned or otherwise conveyed to the Corporation) which information has commercial value to the Corporation, including but not limited to trade secrets, innovations, equipment designs, processes, computer codes, data, know how, improvements, discoveries, developments, techniques, marketing plans, strategies, costs, customers, and client lists, or any information Employee has reason to know the Corporation would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesired publicity, whether or not developed by Employee ("Confidential Information"). In exchange for the restrictions contained in this Agreement, Corporation has exposed and/or will expose Employee to Confidential Information. Unless previously authorized in writing or instructed in writing by the Corporation, Employee will not, at any time, disclose to others, or use, or allow anyone else to disclose or use any Confidential Information (except as may be necessary in the performance of Employee's employment with the Corporation), unless and until and then only to the extent that, such Confidential Information has become ascertainable or obtained from public or published sources or was available to the Employee on a non-confidential basis prior to any disclosure, provided that the source of such material is or was not bound by any obligation of confidentiality to the Corporation. Employee will not, at any time during or after Employee's employment with Corporation, render any services to any person, business or other entity to which Confidential Information will inevitably be disclosed as a result of Employee's rendering of such services. Employee will not, by any means, transfer or forward outside of Corporation's computer network any Corporation

information, including, without limitation, Confidential Information, without the prior written consent of Corporation. Notwithstanding anything in this section 2 to the contrary, Employee is permitted to use the general skills and knowledge Employee acquired while working for Corporation.

Upon termination of employment, Employee shall return to the Corporation any and all property and records of the Corporation in his possession, at the Corporation, at his personal residence or elsewhere. The property covered hereby includes, but is not limited to, all information described in the preceding paragraph, the original and all copies of any Corporation documents, the original and all copies of any computer tapes or disk containing any Corporation information, credit cards, keys to the Corporation's facility or equipment, and any and all other Corporation material.

3. Employee Inventions. Employee covenants that any idea, invention, technique, modification, process, improvement, industrial design, work of authorship, or mask work created, conceived, or developed by Employee, either solely or in conjunction with others, that relates in any way to, or is useful in any manner in, the Business of Corporation (collectively, "Employee Invention") will belong exclusively to Corporation. Employee acknowledges that all Employee Inventions are works made for hire and the property of Corporation, including any copyrights, patents, or other intellectual property rights pertaining thereto. If it is determined that any such works are not works made for hire, Employee hereby assigns to Corporation all of Employee's right, title, and interest, including all rights of copyright, patent, and other intellectual property rights, to or in such Employee Inventions. Employee covenants that Employee will promptly (i) disclose to Corporation in writing any Employee Invention; (ii) assign to Corporation or to a party designated by Corporation, at Corporation's request and without additional compensation, all of Employee's right to the Employee Invention for the United States and all foreign jurisdictions; (iii) execute and deliver to Corporation such applications, assignments, and other documents as Corporation may request in order to apply for and obtain patents or other registrations with respect to any Employee Invention in the United States and any foreign jurisdictions; and (iv) sign all other papers necessary to carry out the above obligations.

4. <u>Remedies</u>. Employee acknowledges that the limitations contained herein are reasonable and will not prohibit him from earning a livelihood. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys fees and costs incurred by the Corporation in enforcing this Agreement. Nothing herein, however, shall be construed as prohibiting the Corporation from pursuing any other remedies available to the Corporation for such breach or threatened breach, including the recovery of damages from the Employee. The period of time during which Employee is prohibited from engaging in competition or solicitation pursuant to section 1 shall be extended by any length of time during which Employee is in breach of any of such covenants. Employee acknowledges Corporation's right to decide how to handle employee breaches of restrictions the same as or similar to

those found in sections 1 and 2, and, as a result, Employee agrees that Employee could not have and does not have any defense to Corporation's enforcement of the restrictions in sections 1 and 2 due to Corporation's alleged acquiescence in such other breaches. The restrictions in sections 1 and 2 survive the termination of Employee's employment with Corporation. Employee further acknowledges and agrees that no material or other breach of any contractual or legal duty by Corporation under this Agreement or otherwise shall be held sufficient to excuse or terminate Employee's obligations under sections 1 and 2 of this Agreement or to preclude Corporation from obtaining injunctive relief.

5. Revocation of Authorization. Immediately upon the termination of Employee's employment with Corporation for any reason or no reason, Employee is not permitted to access Corporation's computer network or website for any purpose. Any and all authorizations for use of the Corporation's computer network or website are considered revoked as of the termination of Employee's employment with Corporation. The provisions of this section apply to the computer network and website of any affiliate of Corporation.

6. Assignment. This Agreement is personal to Employee, and Employee may not assign Employee's rights (or delegate Employee's duties) under this Agreement without the prior written consent of Corporation. Corporation may assign all of Corporation's rights under this Agreement to Corporation's successors and assigns. Employee acknowledges and agrees that unless specifically stated otherwise by Corporation in writing, any such assignment by Corporation does not constitute the Employee's termination from Corporation for purposes of the post-employment periods of restriction provided in section 1.

7. Waiver of Breach and Severability. The waiver by the Corporation of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Employee. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, the parties agree that any such part should be construed by a court, by limiting or reducing it, so as to be enforceable to the greatest or broadest extent compatible with applicable law as it then exists. In the event any provision of this Agreement is found to be invalid or unenforceable, it may be severed from this Agreement, and the remaining provisions of this Agreement shall continue to be binding and effective, or the court may reform the unenforceable provision in a manner which is enforceable to the maximum extent permitted by law and is consistent with the general intention of the parties.

8. Entire Agreement. This Agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements between the parties concerning the subject matter hereof, except that if the restrictions in this Agreement are not enforceable for any reason, then any prior agreement with the same or similar restrictions may be enforced by Corporation without prejudice due to the execution of this Agreement. This Agreement may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

9. Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employee's last-known residence, in the case of the Employee, or its principal office, in the case of the Corporation.

10. Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Ohio.

11. Voluntary Execution. The Employee acknowledges that he has had the right to secure legal counsel to review and discuss the legal implications of this Agreement prior to its execution and that he has entered into this Agreement voluntarily. No party to this Agreement shall be deemed to be the author of this Agreement and there shall be no presumption that this Agreement is to be construed for or against any party to this Agreement on the basis of the authorship or drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective as of the date signed by Employee.

Date: ______________ ______________

Alexander Magana "Employee"

BADGER DAYLIGHTING CORP.

Date: ______________

By: ______________

Its: ______________

"Corporation"

**Ex. C**

STATE OF INDIANA ) ) SS: COUNTY OF MARION )

IN THE MARION SUPERIOR COURT

CAUSE NO. 49D01 1608 PL 030094

BADGER DAYLIGHTING CORP.

Plaintiff

VS

DANIEL SCALES

Defendant.

FILED

(175) AUG 16 2016

Myla A. Eldridge
CLERK OF THE MARION CIRCUIT COURT

## COMPLAINT

Plaintiff, Badger Daylighting Corp., by counsel, for its Complaint against Defendant Daniel Scales alleges and states as follows:

1. Plaintiff Badger Daylighting Corp. ("Badger") is a Nevada corporation with its principal place of business located at 8930 Motorsports Way, Brownsburg, Indiana.

2. Upon information and belief, Defendant Daniel Scales ("Scales") is a resident of California.

3. Badger is in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada.

4. From August 13, 2014 until July 5, 2016, Scales was employed by Badger as a Regional Manager.

5. As a condition of his initial employment with Badger, Scales signed a Confidentiality and Non-Competition Agreement ("Agreement") with Badger. A true and accurate copy of the Agreement is attached to this Complaint as Exhibit A.

6. The Agreement contains several restrictive covenants. In particular, Paragraph 1, subsection (b) prohibits Scales from competing with Badger in the states of California, Oregon and Washington for a period of two (2) years from his separation of employment with Badger.

7. In addition, Paragraph 1, subsection (c) of the Agreement contains a non-solicitation restriction that prohibits Scales from soliciting any "[e]mployee, consultant, or contractor or sub-contractor" of Badger for a period of two (2) years following his separation of employment from Badger.

8. As a Regional Manager for Badger, Scales had access to and became privy to confidential and trade secret information of Badger.

9. As a Regional Manager for Badger, Scales was exposed to and developed relationships with customers of Badger in the states of California, Oregon and Washington.

10. As a Regional Manager for Badger, Scales also became familiar with (i) the training each Badger employee received; (ii) the skills and experience Badger's employees brought to their jobs with Badger; and (iii) the historical compensation and benefits the Badger employees received during their employment with Badger.

11. As a Regional Manager for Badger, Scales also developed relationships with Badger's employees.

12. On July 4, 2016, Scales notified Badger that he was resigning from his employment with Badger to accept a position with Clean Harbors.

13. Clean Harbors is a competitor of Badger.

14. Since Scales left to join a competitor, Badger made his resignation effective July 5, 2016.

15. Upon information and belief, following his resignation, Scales has breached the Agreement (i) by working in a competitive capacity with a competitor of Badger, namely Clean Harbors; and (ii) by soliciting multiple Badger employees to leave Badger to work for Clean Harbors.

16. On July 26, 2016, counsel for Badger sent a letter to Scales notifying him that Badger was aware that he was working for Clean Harbors and soliciting employees of Badger, that his actions were in violation of the Agreement, and that he must stop what he was doing.

17. Upon information and belief, despite being warned, Scales has continued to solicit Badger employees for employment with Clean Harbors in violation of the Agreement.

18. As a direct and proximate result of Scales' breach of the Agreement, Badger has suffered and will continue to suffer damages.

19. At Paragraph 7, the Agreement contains a Governing Law and Venue provision which states that the "[A]greement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana." Plaintiff files its Complaint against Scales under Indiana law and in Marion County, Indiana as agreed by the parties.

20. Under Paragraph 3 of the Agreement, Badger is entitled to recover against Scales the reasonable attorney fees and costs it incurs in enforcing the Agreement.

WHEREFORE, Plaintiff Badger Daylighting Corp., by counsel, respectfully requests that judgment be entered in favor of Plaintiff and against Defendant Daniel Scales for the amount of Plaintiff's damages, its attorney fees and costs and all other relief just and proper.

Respectfully submitted,

**BECKMAN LAWSON, LLP**

By: ______________________

Craig R. Patterson, #18104-02
201 West Wayne Street
Fort Wayne, IN 46802
Telephone: (260) 422-0800
Attorneys for Plaintiff

# CONFIDENTIALITY AND NON-COMPETITION AGREEMENT

THIS CONFIDENTIALITY AND NON-COMPETITION AGREEMENT (the "Agreement") is made and entered into by and among BADGER DAYLIGHTING CORP., a Nevada corporation (the "Corporation") and Daniel Scales (the "Employee").

## Recitals

A.    The Corporation is engaged in the business of providing hydrovac excavation services and equipment sales throughout the United States and Canada (the "Business").

B.    Employee will be an at-will employee of the Corporation and in such capacity will have access to confidential and proprietary information and materials integral to the welfare of the Business which the Company desires to maintain as confidential.

## Agreement

NOW, THEREFORE, in consideration of the foregoing Recitals, the mutual covenants and promises contained herein, each act done pursuant hereto, Employee's at-will employment by the Corporation, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1.   Covenants Against Competition.  The parties each acknowledge that the relationship of Employee with the Corporation will be one by which the Employee will have access to certain confidential and proprietary information integral to the Business, and the services Employee will render to the Corporation will be of a unique and special character.  In view of this relationship with the Corporation, Employee covenants and agrees that during his employment, and during the Period (as hereinafter defined), Employee shall not, directly or indirectly:

(a)  solicit, accept, or divert business from any customer of the Corporation or attempt to convert any such customer to acquire services from another person or entity which are similar to the services provided by the Corporation.  As used herein, the term "customer" shall mean any person or entity to whom the Corporation has provided services during the preceding twelve months prior to the start of the Period, or any such

EXHIBIT

A

persons or entities known by Employee to have been targeted or contacted by the Corporation for the sale of such services during such twelve months;

(b)  within the geographical area of the State(s) of California, Oregon and Washington compete in any manner with the Corporation, or own, manage, operate, control, be employed by, participate in, or be connected in any manner with the ownership, management, operation or control of any business which competes directly or indirectly with the Corporation; and

(c)  solicit for employment any employee, consultant, contractor or sub-contractor of the Corporation.

As used herein, the term "directly or indirectly" shall be construed in its broadest sense and the term "Period" shall mean two (2) years from the date Employee ceases to be employed by the Corporation, regardless of cause.

2.  Confidentiality.  The Corporation possesses, and will continue to possess, information which has been created, discovered, developed by or otherwise become known to the Corporation (including information discovered or made available by subsidiaries, affiliates or joint ventures of the Corporation or in which property rights have been assigned or otherwise conveyed to the Corporation) which information has commercial value to the Corporation, including but not limited to trade secrets, innovations, equipment designs, processes, computer codes, data, know how, improvements, discoveries, developments, techniques, marketing plans, strategies, costs, customers, and client lists, or any information Employee has reason to know the Corporation would like to treat as confidential for any purpose, such as maintaining a competitive advantage or avoiding undesired publicity, whether or not developed by Employee ("Confidential Information"). Unless previously authorized in writing or instructed in writing by the Corporation, Employee will not, at any time, disclose to others, or use, or allow anyone else to disclose or use any Confidential Information (except as may be necessary in the performance of Employee's employment with the Corporation), unless and until and then only to the extent that, such Confidential Information has become ascertainable or obtained from public or published sources or was available to the Employee on a non-confidential basis prior to any disclosure, provided that the source of such material is or was not bound by any obligation of confidentiality to the Corporation.

Upon termination of employment, Employee shall return to the Corporation any and all property and records of the Corporation in his possession, at the Corporation, at his personal residence or elsewhere.  The property covered hereby includes, but is not limited to, all information described in the preceding paragraph, the original and all copies of any Corporation documents, the original and all copies of any computer tapes

or disk containing any Corporation information, credit cards, keys to the Corporation's facility or equipment, and any and all other Corporation material.

3. Remedies. Employee acknowledges that the limitations contained herein are reasonable and will not prohibit him from earning a livelihood. In the event of an actual or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys fees and costs incurred by the Corporation in enforcing this Agreement. Nothing herein, however, shall be construed as prohibiting the Corporation from pursuing any other remedies available to the Corporation for such breach or threatened breach, including the recovery of damages from the Employee.

4. Waiver of Breach and Severability. The waiver by the Corporation of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by the Employee. If any part of this Agreement is for any reason held to be excessively broad as to time, duration, geographical scope, activity or subject, the parties agree that any such part should be construed by a court, by limiting or reducing it, so as to be enforceable to the greatest or broadest extent compatible with applicable law as it then exists. In the event any provision of this Agreement is found to be invalid or unenforceable, it may be severed from this Agreement, and the remaining provisions of this Agreement shall continue to be binding and effective, or the court may reform the unenforceable provision in a manner which is enforceable to the maximum extent permitted by law and is consistent with the general intention of the parties.

5. Entire Agreement. This Agreement contains the entire agreement of the parties concerning the subject matter hereof and supersedes all prior agreements between the parties concerning the subject matter hereof. This Agreement may not be changed orally, but only by an agreement in writing, signed by the party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.

6. Notices. Any notice required or permitted to be given under this Agreement shall be sufficient if in writing and if sent by registered mail to the Employee's last-known residence, in the case of the Employee, or its principal office, in the case of the Corporation.

7. Governing Law and Venue. This Agreement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana.

8. Voluntary Execution. The Employee acknowledges that he has had the right to secure legal counsel to review and discuss the legal implications of this Agreement prior to its execution and that he has entered into this Agreement voluntarily. No party to this Agreement shall be deemed to be the author of this Agreement and there shall be no

presumption that this Agreement is to be construed for or against any party to this Agreement on the basis of the authorship or drafting of this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective the 25th day of August of 2014.

Date: 8/13/14

Daniel Scales "Employee"

BADGER DAYLIGHTING CORP.

Date: 8/14/14

By: ______________________

Its: ______________________

"Corporation"

C:\My Documents\Conf and Non-Compete Blank.doc

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
David Greifinger (SBN 105242)
15515 Sunset Blvd., No. 214
Pacific Palisades, California 90272
TELEPHONE NO.: (424) 330-0193 FAX NO.: (831) 920-4864
ATTORNEY FOR (Name): Plaintiffs

FOR COURT USE ONLY

ELECTRONICALLY FILED
1/27/2017 8:00:00 AM
Kern County Superior Court
Terry McNally
By Vanessa Cofield, Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN
STREET ADDRESS: 1415 Truxton Ave.
MAILING ADDRESS: 1415 Truxton Ave.
CITY AND ZIP CODE: Bakersfield, California 93301
BRANCH NAME: Metro Division

CASE NAME:
Scales, et. al. v. Badger Daylighting Corp.

## CIVIL CASE COVER SHEET

☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less)

Complex Case Designation
☐ Counter ☐ Joinder
Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402)

CASE NUMBER: BCV-17-100196
JUDGE:
DEPT:

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☑ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. ☐ monetary b. ☑ nonmonetary; declaratory or injunctive relief c. ☐ punitive
4. Number of causes of action *(specify)*: 1
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: January 26, 2017
David Greifinger
(TYPE OR PRINT NAME)
[signature]
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]
CIVIL CASE COVER SHEET
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN<br>BAKERSFIELD COURT<br>1415 TRUXTUN AVENUE<br>BAKERSFIELD CA 93301 | FOR COURT USE ONLY<br><br>FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF KERN<br>JANUARY 30, 2017<br>TERRY MCNALLY, CLERK<br>BY Vanessa Cofield DEPUTY |
|---|---|
| PLAINTIFF/PETITIONER:<br>DANIEL SCALES<br>ALEX MAGANA<br>BRIAN MARTELLO<br>DEFENDANT/RESPONDENT:<br>BADGER DAYLIGHTING CORP. | |
| NOTICE OF ASSIGNMENT TO JUDGE FOR ALL PURPOSES AND NOTICE OF ORDER TO SHOW CAUSE RE CRC RULE 3.110 AND NOTICE OF CASE MANAGEMENT CONFERENCE | CASE NUMBER:<br>DCV-17-100196 |

By order of the presiding judge, the above entitled case is assigned to the Honorable David R. Lampe for all purposes. It will be managed on the direct calendar program in Bakersfield Department 11 until its conclusion. Peremptory challenges, if any, must be made within the times set out in CCP §170.6. Please include the initials **DRL** after the case number on all future pleadings filed in this case.

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**
You are ordered to appear on **May 15, 2017** in **Bakersfield Department 11** at **8:30 AM** in the above entitled court to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110. All appearances are mandatory, unless the court receives the required proof(s) of service five (5) court days prior to the hearing date, and then no appearance is necessary.

**TO EACH PARTY AND THEIR RESPECTIVE ATTORNEY(S) OF RECORD:**
This case is set for Case Management Conference, by the Honorable David R. Lampe on **July 31, 2017** at **8:30 AM** in **Bakersfield Department 11** of the above entitled court. Case management statements are to be filed at least fifteen (15) days prior to the conference in accordance with California Rules of Court, Rules 3.720 – 3.730. All parties shall comply with California Rules of Court, Rules 3.720 – 3.730.

**NOTICE TO PLAINTIFF'S COUNSEL**

**IMPORTANT: You are required to serve this Notice of Assignment and Notice of Order to Show Cause Date and Notice of Case Management Conference Date with the Summons, Complaint [Local Rule 3.7(a)], Alternative Dispute Resolution (ADR) Information Packet, Civil Mediation Information Brochure, and ADR Stipulation and Order Form (California Rules of Court, Rule 3.221).**

**NOTICE TO CROSS COMPLAINANT'S COUNSEL**

**IMPORTANT: If you are bringing a cross complaint against new parties, you are, likewise, required to serve this Notice of Assignment pursuant to California Rules of Court, Rule 3.110 and Notice of Order to Show Cause date and Notice of Case Management Conference date on the new cross defendants.**

**TERRY MCNALLY**
CLERK OF THE SUPERIOR COURT

Date: January 30, 2017

By: Vanessa Cofield
Vanessa Cofield, Deputy Clerk

The Clerk of the Superior Court's office has received a civil complaint from you for filing. Pursuant to the Trial Court Delay Reduction Act, your case has been assigned to the Honorable David R. Lampe as monitoring judge.

Judge David R. Lampe has instituted a direct calendaring system for all cases assigned to him/her as the monitoring judge.

All law and motion, case management and trial setting conferences, ex parte matters and trials will be scheduled before him/her in Bakersfield Department 11. This will involve all cases in which the clerk has assigned the initials DRL to the complaint at the time of filing. Counsel is expected to make the initials of the monitoring judge a part of the case number on all pleadings and papers.

Judge David R. Lampe expects that all law and motion hearings to be heard by him/her be set within five (5) days of the earliest date that they may be heard, given mail notice of hearing. **Law and motion matters must be reserved by going to the website address http://kerncourtlink.com for the Kern Courtlink Online Reservation System. The website is available at any time. You may calendar motions as scheduled below. Ex-parte matters require pre-clearance.**

At the time of filing the complaint, plaintiff's counsel will be given a Notice of Case Management Conference which sets a conference approximately one hundred eighty (180) days after filing of the complaint. This notice must be served with the summons and complaint on all defendants. Defendants must serve the notice on all cross-defendants named. The notice must also be served on interveners and lien claimants.

Telephonic appearances for case management conferences and law and motion hearings are available through Court Call. The toll free telephone number for Court Call is (888) 88-COURT. Proper procedures must be complied with under California Rules of Court, Rule 3.670. Arrangements to make appearances through Court Call must be made at least five (5) court days prior to the hearing date.

Another judge will hear settlement conferences in cases assigned to Judge David R. Lampe. However, those cases that do not settle will be set for trial before him/her.

To confirm any hearing on calendar, for general questions regarding cases assigned to Judge David R. Lampe or to pre-clear an ex-parte hearing, contact the Direct Calendaring Clerk at 661-868-2622. To check on tentative rulings from Judge Chapin, go to the court's website address "http/www.kern.courts.ca.gov/", after 4:00 pm, and click on tentative rulings. Judge Brumfield and Judge Lampe do **not** offer tentative rulings.

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF KERN**
**SPECIAL RULES RELATING TO CASE MANAGEMENT CONFERENCES**

At least fifteen (15) days prior to the case management conference, each party shall prepare, file and serve on each other party a case management conference report providing the Court with the following information:

1. The "at-issue" status of the case including any new parties that may be contemplated;
2. A brief statement of the type of case and the general facts or contentions;
3. A description of the discovery done to date and that contemplated to be done;
4. Estimated time for trial and whether a jury is demanded;
5. Whether or not the case is entitled to priority in trial setting and if so, the legal authority thereof;
6. An evaluation of the case for alternative dispute resolution, including arbitration (judicial or binding), mediation or private judge handling;
7. If a person injury action, a description of the injuries sustained by each plaintiff and the elements of claimed damage;
8. A statement of any settlement negotiations undertaken thus far;
9. The name of the attorney primary responsible for the case on behalf of the party filing the report.

More than one party may join in the filing of a single report.

The case management conference shall be attended by the attorney primarily responsible for the case on behalf of each party or a member of his or her firm or counsel formally associated in the case. The attorney attending shall be thoroughly familiar with the case, and be able to engage in meaningful discussions with court and counsel, and to enter into agreements on behalf of his or her client on the following subjects:

1. The "at-issue" status of the case including the dismissal of the unnamed doe defendants or cross-defendants by agreement of all parties;
2. Discovery conducted and remaining to be done;
3. Amenability of the case to alternative dispute resolution including, but no limited to, arbitration (judicial or binding), mediation, and private judge handling.
4. Delineation of issues including stipulation of facts not in substantial controversy;
5. Settlement prospects;
6. Setting the matter for trial, pre-trial conferences, settlement conference or further case management conference;
7. Any other matters relevant to the processing of the case to a final resolution.

Any violation of these rules shall result in the imposition of substantial sanctions which may include monetary, issue, termination, or other appropriate sanctions.