UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL SCALES, an individual; ALEX MAGANA, an individual; and BRIAN MARTELLO, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BADGER DAYLIGHTING CORP., a Nevada Corporation; and DOES 1-20 inclusive,<br><br>Defendants. | No. 1:17-cv-00222-DAD-JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>(Doc. No. 9) |

This matter is before the court on the motion to dismiss for *forum non conveniens* brought by defendant Badger Daylighting Corporation. (Doc. No. 9.) A hearing on the motion was held on April 4, 2017. Attorney David Greifinger appeared on behalf of plaintiff Daniel Scales. Attorney Jon Setoguchi appeared on behalf of defendant. Having considered the parties' briefs and oral arguments and for the reasons set forth below, the court will grant defendant's motion to dismiss.

**BACKGROUND**

Defendant, Badger Daylighting Corporation ("Badger"), is incorporated in Nevada with its principal place of business in Indiana, and is in the business of "providing hydrovac

1

excavation services throughout the United States and Canada." (Doc. No. 9 at 8–9.) Plaintiff, Daniel Scales, is a California resident and was employed with Badger from August 2014 to July 2016 as a Regional Manager. (*Id.* at 9.) In this capacity, plaintiff received extensive training and attended "several executive management meetings in Indiana over the course of his employment." Otherwise, plaintiff worked out of defendant's Taft, California office and his "activities related to commerce were for California centered business, only." (Doc. No. 12 at 5.) As a Regional Manager, plaintiff had access to a wide variety of defendant's trade secrets and confidential information. (Doc. No. 9 at 9.) As part of his job, plaintiff developed relationships with customers in California and was responsible for training and interacting with defendant's employees since some of his duties included keeping track of payroll and benefits in a human resources capacity. (*Id.* at 9–10.)

Upon accepting employment with defendant, plaintiff signed a Confidentiality and Non-Competition Agreement ("the Agreement"). (*Id.* at 10.) Plaintiff was told the documents were routine and that all new employees sign them. (Doc. No. 12 at 5.) The agreement contains several provisions relevant to resolution of the pending motion. First, in Paragraph 1 of the Agreement, plaintiff agreed to certain restrictive covenants. Specifically, Paragraph 1, subsection (b) provides that for a period of two years after terminating employment with defendant, plaintiff shall not "within the geographical area of the State(s) of California, Oregon, and Washington, compete in any manner with the Corporation . . . ." (Doc. No. 1 at 35–36.) Subsection (c) of Paragraph 1 also provides that upon termination of employment plaintiff shall not for a period of two years, "solicit for employment any employee, consultant, contractor, or sub-contractor of the Corporation." (*Id.*) Second, "Paragraph 2 of the Agreement contains a confidentiality restriction that prohibits plaintiff from disclosing or using 'Confidential Information' of Badger, which is defined to include any trade secret, confidential or competitively sensitive information of Badger." (Doc. No. 9 at 10–11.) Perhaps most importantly, Paragraph 7 of the Agreement provides that the "Agreement shall be governed by and construed in accordance with the laws of the State of Indiana and any disputes arising hereunder shall be brought and heard in the state or federal courts sitting in Marion County, Indiana." (Doc. No. 1 at 37.) Finally, plaintiff agreed

that these restrictive covenants could be enforced through injunctive relief and that defendant may recover attorneys' fees and costs expended in enforcing the Agreement. (Doc. No. 1 at 37, ¶ 3.)

On July 6, 2016, plaintiff resigned from Badger after two years of employment and accepted an offer from Clean Harbors Corporation ("Clean Harbors"). (Doc. No. 9 at 11.) According to defendant, "Clean Harbors is a direct competitor of Badger, offering services that compete with Badger's services in hydrovac excavation." (*Id.*) Defendant believes plaintiff also "specifically targeted Badger employees in an effort to have them leave Badger and join Clean Harbors." (*Id.*) Plaintiff now serves as Regional Manager for Clean Harbors in California, one of the territories he was responsible for while at Badger. (*Id.*) Defendant believes plaintiff's responsibilities in his current capacity at Clean Harbors are the same responsibilities as those he had when employed with Badger. (*Id.*)

Following plaintiff Scales' departure, defendant Badger filed suit in Marion County Superior Court, Indiana on August 24, 2016.[1] (*Id.*) Defendant's complaint in that action alleges that plaintiff breached the parties' Agreement, namely the restrictive covenants, by working and soliciting employment for Clean Harbors immediately after terminating his employment with Badger. In its action filed in Indiana, Badger "seeks damages, attorneys' fees and costs and all other appropriate relief." (*Id.* at 12.) Plaintiff has filed an answer to Badger's complaint in the Marion County Superior Court, but as of the time of the hearing on the pending motion before this court has not moved to dismiss the Indiana case. Trial in that action is currently set for January 23, 2018. (*Id.*)

On January 27, 2017, plaintiff Scales along with two other former employees, plaintiffs Magana and Martello, filed suit against defendant in the Kern County Superior Court. Defendant removed the case to this federal court on February 15, 2017. Here, plaintiffs seek declaratory judgment "under section 1060 that their respective Non-Competition Agreements are an unlawful and unenforceable restraint of trade, in violation of section 16600 of the California Business and Professions Code, and that Defendants' efforts to enforce the Agreement constitutes an unfair

---

[1] The case is entitled *Badger Daylighting Corp. v. Daniel Scales*, Case No. 49D01-1608-PL-030094 and is before the Hon. Heather A. Welch in Civil Division 1. (Doc. No. 9 at 23.)

business practice under Business and Professions Code section 17200." (Doc. No. 1 at 17, ¶ 26.) On February 21, 2017, defendant filed the pending motion to dismiss the first cause of action as to plaintiff Daniel Scales only for *forum non conveniens*. (Doc. No. 9.)[2] Plaintiff Scales filed his opposition to defendant's motion to dismiss on March 17, 2017. (Doc. No. 12.) Defendant filed its reply on March 28, 2017. (Doc. No. 13.)

**DISCUSSION**

**I.** *Forum Non Conveniens* **Analysis**

Forum selection clauses where venue is proper[3] are ordinarily enforced by way of a motion to transfer venue brought under 28 U.S.C. § 1404(a). In this regard transfer is the appropriate procedural mechanism where the alternative venue is another federal court. *Atl. Marine Const. Co., Ins. v. U.S. District Court for Western Dist. of Texas*, ___U.S.___, ___, 134 S. Ct. 568, 580 (2013) (noting that, "[s]ection 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."). Alternatively, "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* The forum selection clause here points to a state forum and is reflected in Paragraph 7 of the Agreement, which provides, "any disputes arising hereunder shall be brought and heard in the state or federal

---

[2] Thus, any specific contentions with respect to the other plaintiffs, Alex Magana and Brian Martello, are not at issue in connection with the pending motion to dismiss.

[3] Venue is proper where a case is brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). Defendant concedes and the court agrees that venue is proper in this court. (Doc. No. 9 at 14.) Here, defendant conducts business in Kern County, California. (*Id.*) Additionally, plaintiff's obligations and any wrongful conduct alleged occurred in Kern County, California. (*Id.*) Had defendant argued that venue was improper, the proper procedural mechanism would have been a motion to dismiss brought under 28 U.S.C. § 1406(a) or Rule 12(b)(3).

4

courts sitting in Marion County, Indiana." Accordingly, defendant's motion to dismiss is premised on the doctrine of *forum non conveniens*. Furthermore, the court notes that defendant has filed suit against plaintiff in the Marion County Superior Court for breach of contract.[4] (Doc. No. 9 at 11.) While the procedural vehicle differs for federal and nonfederal forums, the Supreme Court has held that because § 1404(a) derives from the doctrine of *forum non conveniens* the analysis should be the same since both "entail the same balancing of interests standards." *Id.*

Under the *forum non conveniens* analysis, the initial inquiry where a state forum is at issue is whether the forum selection clause is valid. The Supreme Court has found that forum selection clauses are presumptively valid and should be honored "absent some compelling and countervailing reason." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1140 (9th Cir. 2004) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972)); *see also Atl. Marine, 134 S. Ct. at 583 (*"In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain."); *Golden State Medical Supply, Inc. v. Capmatic*, Case No.: CV 15-08567-SJO (AGR), 2016 WL 8856649, at *2-3 (C.D. Cal. Jan7, 2016). As such, the "party challenging the clause bears a 'heavy burden of proof' and must 'clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140. (quoting *Bremen*, 407 U.S. at 15). In *Bremen*, the Supreme Court identified three grounds upon which the challenging party can show that the forum selection clause is unreasonable and should not be enforced:

/////

/////

---

[4] Among several documents referenced in support of its motion to dismiss, defendant requests the court take judicial notice of (1) the complaint filed by defendant Badger against plaintiff Daniel Scales in Marion County Superior Court in Indiana on August 24, 2016; and (2) a copy of the Marion County Superior Court's online docket for that action. (Doc. No. 9-3 at 2.) Copies of the complaint and online docket have been provided in the Declaration of Jon M. Setoguichi as Exhibits B and C respectively. (Doc. No. 9-1 at 9–21.) The court grants these requests for judicial notice because these documents reflect matters of public record. *Harris v. County of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (The court may take "notice of undisputed matters of public record . . . including documents on file in federal or state courts.") (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) and *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002))); *see generally* Fed. R. Evid. 201.

> (1) 'if the inclusion in the agreement was the product of fraud or overreaching'; (2) 'if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced'; and (3) 'if enforcement would contravene a strong public policy of the forum in which suit is brought.'

*Murphy*, 362 F.3d at 1140 (quoting *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting and citing *Bremen*, 407 U.S. at 12–13)); *see also Tompkins v. 23andMe, Inc.,* 840 F.3d 1016, 1029-30 (9th Cir. 2016); *Holland America Line Inc. v. Wartsila North America, Inc.*, 485 F.3d 450, 457 (9th Cir. 2007). In addition, the Ninth Circuit has found that within the "context of employment contracts," the following additional factors may be "taken into account when determining the enforceability of the forum selection clause including:

> (1) 'any power differentials which may exist between the two parties to the contract,' (2) the educational background of the party challenging the clause, (3) the business expertise of the party challenging the clause, and (4) the 'financial ability to bear [the] cost and inconvenience' of litigating in the forum selected by the contract.

*Id.* (quoting and citing *Spraldin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 869 (9th Cir. 1991)); *see also Kedkad v. Microsoft Corporation, Inc.*, No. C13-0141 TEH, 2013 WL 4734022, at *3 (N.D. Cal. Sept. 3, 2013).

While the *forum non conveniens* analysis ordinarily involves a balancing of both the public interest and convenience of the parties, where the court find a forum selection clause to be valid, it need not consider the private interest factors. *Atl. Marine*, 134 S. Ct. at 582; *see also Sun v. Kao,* 170 F. Supp.3d 1321, 1325 (W.D. Wash. 2016); *Adema Techs. Inc. v. Wacker Chemie AG*, No. 13-CV-05599-BLF, 2014 WL 3615799, at *2 (N.D. Cal. July 22, 2014) (where the forum selection clause is valid the court should not consider the parties' private interests), *aff'd sub nom. Adema Techs., Inc. v. Wacker Chem. Corp.*, 657 F. App'x 661 (9th Cir. 2016) (citing *Atl. Marine*, 134 S. Ct. at 581–82). The plaintiff's choice of forum does not warrant consideration and the court should only consider public interest factors such as: "'the administrative difficulties following from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Adema Techs. Inc.*, 2014 WL 3615799, at *2 (citing *Atl. Marine*,

134 S. Ct. at 581 n.6) (quoting *Piper Atlantic Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))).
Thus, the court first considers whether the forum selection clause is valid.

### A. Validity of the Forum Selection Clause

Defendant proffers several reasons as to why in this case the forum selection clause was not the result of fraud or overreaching. (Doc. Nos. 9 at 15–17; 13 at 6–7.) However, plaintiff has not challenged the validity of the forum selection clause on this basis. Rather, plaintiff contends only that this forum selection clause is unreasonable because it deprives plaintiff of his day in court and violates California public policy as expressed in the California Labor Code. (Doc. No. 12 at 8, 10.) In light of plaintiff's focus, the court need not consider defendant's arguments with respect to fraud or overreaching, and instead turns to plaintiff's contentions.

#### 1. *Plaintiff's Day in Court*

Plaintiff argues that being required to litigate this dispute in Indiana, where defendant has already filed suit, will deprive him of his day in court because "in light of his financial considerations, [it] would place an enormous burden on him[.]" (Doc. No. 12 at 10.) Plaintiff argues that "courts are to consider a party's financial ability to litigate in the forum selected by the contract when considering" the reasonableness of enforcing a forum selection clause. (*Id*. at 8) (quoting *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141–42 (9th Cir. 2004) (citing *Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 868–69 (9th Cir. 1991)). However, the court finds the facts in *Murphy* to be distinguishable from those presented here.

In *Murphy*, the plaintiff was a long haul trucker who was injured on the job. *Murphy*, 362 F.3d at 1136. As a result of his accident, the plaintiff was no longer able to work and earned no income. *Id.* at 1142. The plaintiff and his wife received only disability payments of about $2,000.00 and $234.00 per month respectively. *Id.* Both disability payments went towards paying their outstanding bills and the plaintiff had no disposable income. *Id.* The plaintiff's injury also prevented him from sitting for long periods of time such that he would be unable to drive from his residence in Oregon to Wisconsin, the state designated in the forum selection clause. *Id.*
/////

7

Here, plaintiff is currently employed and receives $8,920 per month in net income after taxes. (Doc. No. 12 at 6.) Plaintiff maintains that his monthly expenses include paying "mortgage, car payment, insurance, food, and other day-to-day living expenses," leaving him with no discretionary income. (*Id.*) Plaintiff also asserts that he supports his wife, receives no financial assistance from his employer, and is solely responsible for his legal bills. (*Id.*) Unlike the plaintiff in *Murphy*, plaintiff here is gainfully employed and has not indicated that any physical disability would prevent him from traveling to Indiana to litigate the case there. Additionally, the first-filed action in Indiana has been pending before that court for over nine months. Moreover, plaintiff has hired counsel, appeared in that action and has not moved to transfer or dismiss the Indiana case. (Doc. No. 13 at 8.) Under these circumstances, even if defendant's motion to dismiss were to be denied, plaintiff would be required to litigate in the two forums simultaneously.

Plaintiff argues that defending litigation in Indiana would be costly because he and all relevant witnesses, namely the six employees whom defendant alleges that plaintiff solicited to work at Badger, live in California. (*Id.* at 10.) Plaintiff contends that even if a court were able to compel their presence in Indiana, doing so would result in exorbitant legal costs, which he cannot afford. (*Id.*) While such considerations may be relevant to an analysis under the *forum non conveniens* doctrine, they are not sufficient to establish the unreasonableness of enforcing an otherwise valid forum selection clause. "To establish unreasonableness of a forum selection clause the party resisting enforcement of the clause has a heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party effectively would be denied a meaningful day in court." *Pelleport Inv'rs, Inc. v. Budco Quality Theaters, Inc.*, 741 F.2d 273, 281 (9th Cir. 1984) (holding that, simply alleging that "some of the witnesses will be inconvenienced if forced to travel to California for trial and that the contracts were performed outside of California" is not enough to satisfy the "standard of denial of a meaningful day in court."); see also *Sandler v. iStockphoto LP*, Case No. 2:15-cv-03659-SVW-JEM, 2016 WL 871626, at *3 (C.D. Cal. Feb. 5, 2016) ("[C]ourts have often enforced forum selection clauses even where litigation would be difficult and inconvenient.") (quoting *Russell v. De Los Suenos*,

8

No. 13-CV-2081-BEN (DHB), 2014 WL 1028882, at *7 (S.D. Cal. Mar. 17, 2014)); *Bridgemans Servs. Ltd. v. George Hancock, Inc.*, No. C14-1714JLR, 2015 WL 4724567, at *5 (W.D. Wash. Aug. 7, 2015) ("[T]hese are exactly the types of private costs that are not to be considered in the balancing of interest analysis" because by agreeing to a valid forum selection clause the parties 'waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [itself] or [its] witnesses, or for [its] pursuit of the litigation.'") (quoting Atl. Marine, 134 S. Ct. at 582–84)).

Of course, plaintiff would be able to litigate his claims in the first-filed action in Indiana state court and challenge the non-compete provisions of the Agreement there. Defendants cite authority for the proposition that Indiana courts also apply choice of law rules (Doc. No. 13 at 8), and consider whether "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . ." *S. Bend Consumers Club, Inc. v. United Consumers Club, Inc.*, 572 F. Supp. 209, 212 (N.D. Ind. 1983) (adopting and quoting Restatement (Second) of Conflict of Laws § 187 (1971)); *see, e.g.*, *Austin Powder Co. v. Wallwork*, 761 F. Supp. 612, 616 (S.D. Ind. 1990). In any event, this court need not inquire as to what an Indiana court might do or whether California law would apply, since such considerations are speculative and more appropriately taken into account as part of a choice of law analysis, which is not at issue here. *See, e.g.*, *Mahoney v. Depuy Orthopaedics, Inc.*, No. CIVF 07-1321 AWI SMS, 2007 WL 3341389, at *9 (E.D. Cal. Nov. 8, 2007) ("How another court may or may not decide a subsequent 28 U.S.C. § 1404 motion does not justify the Court refusing to enforce the forum selection clause.")

In light of all these considerations, this court concludes that plaintiff has not shown that he would be deprived of his day in court by being required to litigate his claims in Indiana pursuant to the Agreement's forum selection clause.

### 2. *Violation of Public Policy*

Plaintiff also argues that enforcing the forum selection clause here would violate California public policy. (Doc. No. 12 at 10.) Plaintiff's argument is centered on California

Labor Code § 925 and Business and Professions Code § 16600. According to plaintiff, these sections "read together, instruct that employers may not haul California's workers into foreign courts to deprive them of their right to earn a livelihood." (Doc. No. 12 at 11.) California Labor Code § 925(a) provides,

> An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> (1) Require the employee to adjudicate a claim outside of California a claim arising in California.
>
> (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

A provision of a contract that violates subdivision (a) is "voidable by the employee" and "the matter shall be adjudicated in California." *Id.* at § 925(c). However, "[t]his section shall apply to a contract entered into, modified, or extended on or *after* January 1, 2017." Cal. Lab. Code § 925(f) (emphasis added). Plaintiff entered into the contract at issue here in August 2014 and terminated his employment with defendant in July 2016, *before* § 925 took effect. Therefore, by its very terms § 925 does not apply to the Agreement. Indeed, plaintiff ultimately concedes this point. (Doc. No. 12 at 11) (noting that, "the forum-selection clause in Scales' contract is not subject to the absolute bar of Labor Code section 925 because he signed it before January 1, 2017 . . . .").

Thus, plaintiff's argument is essentially that enforcement of the forum selection clause in this case would violate California's public policy against covenants not to compete. *See* Cal. Bus. & Prof. Code § 16600 ("Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."). As defendants correctly note, "California district courts have found this to be unpersuasive." *Britvan v. Cantor Fitzgerald, L.P.*, No. 2:16-CV-04075-ODW (JPRx), 2016 WL 3896821, at *4 (C.D. Cal. July 18, 2016) (citing *Marcotte v. Micros Sys., Inc.*, No. C 14-01372 LB, 2014 WL 4477349, at *8 (N.D. Cal. Sept. 11, 2014)); *see also Mechanix Wear, Inc. v. Performance Fabrics, Inc.*, No. 2:16-cv-09152-ODW (SS), 2017 WL 417193, at *7 (C.D. Cal.

10

Jan. 31, 2017) ("This Court and others have repeatedly and definitely foreclosed the exact argument Plaintiffs make here: that California's public policy against non-compete agreements renders forum selection clauses in those agreements unreasonable.") (citing cases); *Rowen v. Soundview Commc'ns, Inc.*, No. C 11–5969 SBA, 2012 WL 2792444, at *4–6 (N.D. Cal. July 9, 2012) (summarizing cases in which district courts in California specifically refused to consider "California's policy against non-compete agreements in determining whether a forum selection clause was valid.") "Courts in the Ninth Circuit have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rowen*, 2012 WL 2792444, at *4. As one district court observed under similar circumstances, "[t]he problem with Plaintiff's argument is that it does not challenge the reasonableness of the forum selection clause itself, only the reasonableness of its effect." *Hartstein v. Rembrandt IP Sols., LLC*, No. 12-2270 SC, 2012 WL 3075084, at *5 (N.D. Cal. July 30, 2012). Focusing on the effect, rather than the reasonableness, of a forum selection clause would require the court to "make a determination of the potential outcome of the litigation on the merits in the transferee forum and to consider whether that outcome would conflict with a strong public policy of the transferor forum." *Id.* (quoting *Manchester v. Arista Records, Inc.,* 1981 U.S. Dist. LEXIS 18642, 15–16 (C.D. Cal. Sept. 15, 1981)).

As noted above, attempting to determine what law an Indiana court would apply would be entirely speculative and irrelevant to a determination of whether the forum selection clause of the parties' Agreement is enforceable. Additionally, as already noted, an Indiana court would be able to consider plaintiff's choice of law arguments. *See S. Bend Consumers Club, Inc.*, 572 F. Supp. at 212 (noting that Indiana courts consider whether "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue . . . .") (adopting and quoting Restatement (Second) of Conflict of Laws § 187 (1971)).

Accordingly, absent a showing that dismissal would foreclose all of plaintiff's remedies, the court rejects the argument that enforcement of the forum selection clause here would contravene California's public policy against covenants not to compete. *See Mechanix Wear,*

*Inc.*, 2017 WL 417193, at *7; *Rowen*, 2012 WL 2792444, at *4 ("[A]bsent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause unreasonable only when it contravenes a policy specifically related to venue.") (citing *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497–98 (9th Cir. 2000) (finding the forum selection clause at issue invalid because California Business and Professions Code § 20040.5 provided that California franchisees were entitled to a California venue)).

Because the court concludes that the forum selection clause of the parties' Agreement is valid, it need only consider the public interest factors in determining whether the clause is enforceable here. *See Atl. Marine*, 134 S. Ct. at 581 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation. A court accordingly must deem the private-interest factors to weigh entirely in favor of the preselected forum.")

B. Public Interest Factors

1. *Localized Interests*

As defendant notes, "[i]n evaluating this factor, courts have compared the interests of the forum clause state with the interests of the state where the litigation is currently pending." *Mechanix Wear*, Inc., 2017 WL 417193, at *8 (citing *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *9 (N.D. Cal. Aug. 12, 2016)). Regarding the localized interest in litigating the case in Indiana, defendant argues that its corporate headquarters and principal place of business is in Indiana. (*Id.*) Additionally, defendant notes plaintiff's contacts to Indiana include the fact that he both received training and attended meetings there. (*Id.* at 21.) Defendant also observes that the localized interests weigh in favor of Indiana because this case involves protecting an Indiana company from out-of-state competition. (*Id.*) Finally, defendant contends that many of its former employees likely entered similar employment agreements and there is an interest in having claims calling for the interpretation and enforcement of the Agreement adjudicated in Indiana for purposes of
/////

"consistency and predictability." (*Id.*)[5] Plaintiff, on the other hand, characterizes this case as "a dispute between California employees and their former employer regarding illegal non-competition agreements that the employer seeks to enforce in California." (Doc. No. 12 at 14.)

The court, however, returns to the well-recognized principle that "the plaintiff's choice of forum generally merits no weight in this context." *Rowen*, 2012 WL 2792444, at 7 (citing *Atl. Marine*, 134 S. Ct. at 581). Plaintiff's choice of forum is not to be considered and, here, defendant has already filed suit against plaintiff in Marion County, Indiana alleging breach of the Agreement. Therefore, based upon the consideration offered by defendant, the court finds that the localized interests weigh in favor of litigating plaintiff's claim in Indiana.

2. *Familiarity with the Governing Law*

In determining which state has familiarity with the governing law, courts consider whether the clause designates that a particular state's law should apply. *See Acceler-Ray, Inc. v. IPG Photonics Corp.*, No. 5:16-CV-02352-HRL, 2017 WL 1196835, at *5 (N.D. Cal. Mar. 31, 2017); *see also Britvan*, 2016 WL 3896821, at *6; *Glob. Quality Foods, Inc.*, 2016 WL 4259126, at *9 ("[T]he state courts in Ohio are surely better versed in their own law.") Here, paragraph 7 of the Agreement provides that Indiana law will govern its construction. (Doc. No. 1 at 37.) Moreover, litigation concerning the related claims between these same parties commenced in Indiana August 2016 and trial in that case is scheduled for January 2018. (Doc. No. 9 at 22.) This court concludes that Indiana courts are better suited to apply their own state law as called for by the parties' Agreement.

/////

/////

/////

/////

---

[5] This argument would appear to be misplaced. With respect to the plaintiffs in this action, only plaintiff Scales' employment contract is governed by Indiana law by its terms, while the contracts of plaintiffs Magana and Martello are instead governed by Ohio law. (*See* Doc. No. 1 at 29, ¶ 10.) Accordingly, litigating plaintiff Scales' case in Indiana would not appear to advance consistency and predictability in the interpretation of defendant Badger's employment contracts.

13

3. *Administrative Difficulties*

Defendant contends that litigating the case here would unnecessarily overburden this court given that the docket of the Eastern District of California is already congested[6] and the issues are already being litigated in Indiana. (Doc. No. 9 at 23.) Plaintiff responds that the instant case would not overburden this court because the claims of plaintiffs Magana and Martello would remain even if defendant's pending motion to dismiss is granted. (Doc. No. 12 at 15.) Plaintiff also notes that the plaintiffs here are seeking declaratory relief "which can likely be decided on the briefing alone." (*Id.*)

The court concludes that consideration of administrative difficulties weighs in favor of having the case litigated in Indiana given that maintaining plaintiff Scales' suit against defendant here would result in duplicative proceedings involving the same parties and issues going forward, one in this court and one in Indiana state court which would no doubt pose administrative difficulties.[7]

Considered in their totality, the court also finds that consideration of the public interest factors weigh in favor of maintaining the case in Indiana. Accordingly, the court concludes that

/////

---

[6] Defendant requests that the court take Judicial Notice of the U.S. District Courts' Federal Management Statistics Profiles for the period ending September 2016. Defendant offers this document to compare the total number of filings maintained in the U.S. District Court for the Eastern District of California and the U.S. District Court for the Southern District of Indiana. (Doc. No. 9 at 23.) Plaintiff correctly notes that this comparison is irrelevant given that defendant has filed suit in Indiana state court and plaintiff, as defendant in that suit, has not removed that case to federal court. (Doc. No. 12 at 15.)

[7] Defendant also argues that dismissal is proper under the first-filed rule. (Doc. No. 9 at 23.) That rule "may be invoked 'when a complaint involving the same parties and issues has already been filed in another district.'" *Alltrade, Inc. v. Uniweld Prod., Inc.*, 946 F.2d 622, 625 (9th Cir. 1991) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)). However, "this rule typically applies where claims are filed in two federal district courts, not one in a state court and the other in a federal court." *Wise Investments, Inc. v. Bracy Contracting, Inc.*, No. CIV. 01-3458, 2001 WL 34368922, at *2 (E.D. Pa. Nov. 2, 2001) (citing *EEOC v. Univ. of Pennsylvania,* 850 F.2d 969, 971 (3d Cir.1988)). Because defendant, as plaintiff in *Badger v. Daylighting Corp. v. Daniel Scales*, Case No. 49D01-1608-PL-030094, filed suit in state court and plaintiff Scales, as defendant in that suit, has not removed that case to federal court, the first-filed rule does not apply here.

dismissal of plaintiff Scales' action before this court is proper.[8]

## II. Attorneys' Fees and Costs

Paragraph 3 of the parties' Agreement provides:

> In the event of an actual breach or threatened breach by the Employee of the provisions of this Agreement, the Corporation shall be entitled to an injunction restraining the Employee from such breach without the posting of a surety bond of any type and shall also be entitled to recover from Employee all reasonable attorneys' fees and costs incurred by the Corporation in enforcing this Agreement.

(Doc. No. 1 at 22, ¶ 3.)

Pursuant to this provision, defendant maintains that plaintiff is liable to it for attorneys' fees and costs because by filing his lawsuit in Kern County, California instead of Marion County, Indiana, "plaintiff violated the exclusive forum selection clause of the Agreement." (Doc. No. 9 at 26.) Plaintiff, on the other hand, contends that the clause in question allows "for attorneys' fees in the event of breach or threatened breach" and not for any other type of action. In the action pending before this court, plaintiff seeks declaratory relief and neither party has brought a claim for breach of contract before this court. Moreover, defendant has not cited any authority for the proposition that improper forum selection constitutes a breach of contract, nor has the court found any such authority. The language of the agreement relied upon by defendant does not support its request and, accordingly, the court will deny defendant's request for an award of attorneys' fees and costs.

## CONCLUSION

For all of the reasons set forth above:

1. The court grants defendant's motion to dismiss the first cause of action as to plaintiff Daniel Scales only (Doc. No. 9) for *forum non conveniens;* and

/////

/////

/////

---

[8] In light of this conclusion, the court need not consider defendant's arguments regarding a stay with respect to plaintiff's first cause of action.

15

2. Defendant's request for attorneys' fees and costs incurred in connection with this action as to plaintiff Scales is denied.

IT IS SO ORDERED.

Dated: **June 1, 2017**

UNITED STATES DISTRICT JUDGE